UNITED STATES of America ex rel. James I. SMITH

v.

Edward J. HENDRICK.

Misc. No. 3066.

United States District Court E. D. Pennsylvania.

Oct. 31, 1966.

H. Robert Fiebach, Philadelphia, Pa., for relator.

Arlen Specter, Dist. Atty., by Michael J. Rotko, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION

JOSEPH S. LORD, III, District Judge.

Relator seeks a writ of habeas corpus on the asserted grounds that, (1) his plea of guilty was not knowingly and understandingly entered; and (2) he was not represented by counsel at the time of re-sentencing.

### I. PLEA OF GUILTY

Relator was indicted for conspiracy, robbery, assault and battery, and carrying a concealed weapon. At his non-jury trial, he was represented by Herbert G. Hardin, Esquire, who was an experienced criminal lawyer and an old friend of relator's family who knew relator personally. Smith had specifically requested that Hardin represent him, and the latter agreed to do so without compensation. Before trial, relator discussed the case with counsel.

The Commonwealth presented considerable evidence against Smith, which his attorney tried, rather unsuccessfully, to rebut and discredit by vigorous cross-examination. After the prosecution rested, Mr. Hardin addressed the court, indicating that the plea to robbery and conspiracy would be changed to "guilty," but that defendant would demur to the other bills of indictment. The court thereupon reviewed the various bills and sustained the demurrers.

Relator maintains that he did not realize that his attorney was changing his pleas and that he was, in fact, totally ignorant of the proceedings which surrounded him. Because it is undeniably the constitutional right of every defendant to be informed of the charges against him and to be permitted to enter a guilty plea only with a full recognition of the nature and consequences of his voluntary act, United States ex rel. McDonald v. Commonwealth, 343 F.2d 447 (C.A.3,

1965); United States ex rel. Slebodnik v. Commonwealth, 343 F.2d 605 (C.A.3, 1965), we granted a hearing in order to dispose of the contentions on their merits.

█ Initially, however, we are confronted by relator's argument that the state record itself must affirmatively reveal the requisite notice to the defendant and the latter's knowledgable response, and that it would thus be improper for this court, sitting as fact-finder in a habeas corpus proceeding, to attempt to reconstruct the circumstances surrounding the plea. We cannot agree. See United States ex rel. Smith v. Myers, 250 F.Supp. 460 (E.D.Pa.1966); United States ex rel. Hairston v. Myers, 237 F. Supp. 472 (E.D.Pa.1965), cert. denied Hairston v. Myers, 381 U.S. 943, 85 S.Ct. 1781, 14 L.Ed.2d 706 (1965).

Certainly, our task in habeas corpus hearings would be considerably simplified if the state trial record showed affirmatively that the requisite warnings and explanation of the charge, defenses, penalty and rights to a jury trial were given before the plea was accepted. But state courts are not constitutionally bound to follow this procedure when defendant was represented by counsel, as long as the evidence adduced at the habeas hearing, including the state record as a whole,[1] discloses the requisite voluntariness and knowledge.

█ Relator relies on United States ex rel. McDonald v. Commonwealth, 343 F.2d 447 (C.A.3, 1965), and United States ex rel. Slebodnick v. Common-

wealth, 343 F.2d 605 (C.A.3, 1965) in support of his position that the silence of the state record demand his release. We do not so read those cases. In *McDonald* the relator had been without counsel in the state court. As Judge Freedman pointed out, "it would be impossible to expect of him the detached, impersonal judgment which is the unique contribution of a professional advisor." 343 F.2d at page 451. The court continued: "In such a case, * * *" the comprehension of the accused of the nature of the charge the defenses and the consequence of the plea, "should appear on the record at the time the plea of guilty is entered." Ibid. As we read the decision it is an inevitable product of the justifiable skepticism which necessarily attends the review of any critical criminal proceeding where defendant has acted without benefit of counsel. We do not have here "such a case," for defendant was represented by counsel of his own choice. Furthermore, as we pointed out in United States ex rel. Smith v. Myers, 250 F. Supp. 460 at page 462, (E.D.Pa.1966), the language in *McDonald* sounds "more cautionary than mandatory."

*Slebodnick* did not turn at all on whether the state record must show that the plea was free and intelligent. Rather, it holds that what was admittedly done, as shown by the state record, was inadequate to advise an uncounselled defendant.

Moreover, we think that relator places too much reliance on Commonwealth ex

---

1. The "record" includes not only what was said to and by the relator, but all of the circumstances surrounding the proceedings. Thus, we can easily deduce certain significant, if not necessarily determinative, facts from the record in this case: the presence of counsel, the clear and unambiguous testimony in open court by the prosecution's witnesses, the efforts by counsel on behalf of relator, and the court's open response to those efforts. The record in this case is far from silent, although we would not and indeed could not undertake to make a factual judgment here on the basis of the record alone. Indeed, we wonder whether there is *any* case where the record can be made so clear that a hearing by the habeas court can be obviated, for it is seemingly always open to relator to argue that he was mouthing meaningless formalities to *pro forma* inquiries by the court, however incredible that argument may appear. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Cf. Commonwealth ex rel. Hilberry v. Maroney, 417 Pa. 534, 207 A. 2d 794 (1965), where Mr. Justice Roberts recently recognized the necessity of a hearing by the habeas corpus court even where the record was rather explicit.

rel. Barnosky v. Maroney, 414 Pa. 161 at page 165, 199 A.2d 424 at page 426 (1964), where Mr. Justice Roberts said:

" * * * It would be wise for the court to make particular inquiry as to defendant's knowledge of the nature of the charge, * * * and of the general consequences of his plea. It is desirable to have such matters made known to the defendant by the court even though he be represented by counsel. * * * "

That the above dicta is certainly not mandatory when defendant is represented by counsel is confirmed by the language in Commonwealth ex rel. Crosby v. Rundle, 415 Pa. 81, 85, 202 A.2d 299, 302 (1964):

"Complaint is also made that the trial court failed to inquire into the defendant's apprehension of the charges and failed to inform him of the nature and consequences of his pleas of guilty. Where an accused is represented by counsel, there is no obligation on the part of the court to make any such inquiry or explanation, although it may be advisable to do so. * * * "

■ The federal courts, whose constitutional standards are the minimal acceptable criteria, do not demand record evidence of the voluntariness and intelligence of a plea. Federal Rule of Criminal Procedure 11, which long required findings of voluntariness and knowledge and now demands personal inquiry by the court, does not require record evidence of the trial court's inquiry and the defendant's reply. See, e. g., Del Piano v. United States, 362 F.2d 931 (C.A.3, 1966); Hobbs v. United States, 340 F.2d 848 (C.A.7, 1965), cert. denied, 382 U.S. 908, 86 S.Ct. 245, 15 L.Ed.2d 160 (1965); United States v. Boyance, (E.D.Pa.) opinion by Luongo, J., 258 F.Supp. 935, filed September 15, 1966; contra, Heiden v. United States, 353 F. 2d 53 (C.A.9, 1965). It would seem anomalous to impose upon state courts a greater burden of stenographic explicitness. We hold that if the federal habeas judge is satisfied by all the evidence, including the evidence or lack of it in the state record and the evidence adduced before him, that there was, in fact, a knowing and voluntary plea, the silence of the state record as to this fact does not constitutionally infect the plea. To hold otherwise would have constitutional rights depend on a formalism. The root inquiry is whether the plea was free and intelligent. The evidence to prove that may, but must not, be the state record, although the absence of such evidence in the state record is certainly an evidentiary fact to be considered with the other evidence, or lack of evidence emerging at the habeas corpus hearing.

We pass, then, to the question of whether relator's plea was, in fact, knowing and voluntary, and in finding the facts, we have considered both the state record and the evidence at the habeas hearing.

Relator (N.T. 43–45) and Mr. Hardin (N.T. 54–55) were agreed that they had discussed the case, at least to some extent, before trial. Relator was by no means ignorant of court procedures, and despite the allegedly poor acoustics in the courtroom, we find it incredible that he could not comprehend the testimony which directly confronted him. As Mr. Hardin said to the state trial judge (state record, p. 35):

"Your Honor, * * * I explained to all [of the defendants] that I thought it would go much better for them and the Judge would be more likely to consider some sort of clemency in their case if they made a clean breast of what they had done and pled guilty. After I heard the evidence and the calibre of the evidence, it was on my advice they pled guilty. * * "

And again at the habeas hearing (N.T. 56–57) Mr. Hardin testified:

"As I recall it, the testimony was conclusive. * * * I told [Smith], 'It doesn't look too good. * * * I don't think there is any question about what the verdict would be. * * * Your best bet is to plead guilty to the robbery because they got you cold. * * * I think Judge Little will give

you some sort of consideration if you plead guilty.' * * * "

Relator places much emphasis on the fact that the record reveals no formal recess at the end of the Commonwealth's evidence, during which time he might have consulted with counsel as to what next occurred on the record: the demurrers and pleas, entered verbally by Hardin. At the habeas hearing, Mr. Hardin testified positively that a short conference had occurred, of about "three to four minutes." (N.T. 66). Furthermore, Hardin "talked to [his] client at the Counsel table * * * all during the Commonwealth's case * * *." (N.T. 65). There is, in short, not the slightest doubt reflected in Mr. Hardin's testimony that his client knew of and agreed to the change of pleas.

Smith complains that he could not even hear what was occurring at the bench. Again, his allegation is contradicted by his attorney's statement that "at the time we entered the pleas he stood right beside me." (N.T. 59). In any event, since this was a non-jury case, the conversation took place in open court and, as Mr. Hardin stated (and we confirm), "I speak in a loud, distinct voice at all times." (N.T. 59).

█ Therefore, on the basis of the state record, which we have carefully examined, and of the habeas corpus hearing which we held, we are convinced that the relator, having heard the evidence, knew the charges against him and that, in view of the damaging nature of the evidence, he voluntarily and intelligently changed his plea with the advice and assistance of counsel.

## II. COUNSEL AT RE-SENTENCING

Relator complains that he was not directly represented by counsel at the time of re-sentencing on February 26, 1954, eleven days after the trial had ended and the original sentence had been imposed.

He argues that this is such a fundamental defect in criminal procedure as to warrant our granting the writ.

█ It is true, of course, that ordinarily counsel should be present in order to ensure that the sentencing process be more than a ritualized retributory reaction to criminal culpability. See United States ex rel. Mazewski v. Myers, 359 F.2d 940, 948 (C.A.3, 1966); United States v. Tribote, 297 F.2d 598 (C.A.2, 1961). Where, however, the court reduces the sentence already imposed, the presence of counsel is not required in the absence of demonstrable prejudice. Vitoratos v. Maxwell, 351 F.2d 217 (C.A.6, 1965). At the time of the original sentencing, February 15, 1954, Mr. Hardin made an eloquent plea for mercy on behalf of his client (see state record 36–40), after which the court imposed a sentence of two to ten years.

But Mr. Hardin went even further. He later pressed the court for a reconsideration of the sentence, as a result of which Smith's minimum was reduced from two years to eighteen months. There is no suggestion that relator was in the slightest degree prejudiced by Hardin's absence at the time his previous efforts bore fruit in shape of the reduced sentence.

█ Due process does not demand appearance of counsel at the time of reduction of sentence when the court has already been actively, articulately, and effectively apprised by counsel of the relevant facts bearing on the sentencing decision.

For the foregoing reasons, the petition is denied.

It is so ordered.

The court wishes to commend H. Robert Fiebach, Esquire, court-appointed counsel for relator, for his diligence and skill in the preparation and presentation of brief and argument. That relator was here ably represented cannot be gainsaid.